# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **NICHOLAS PIERRON** | **CIVIL ACTION** |
| **VERSUS** | **NO. 11-3038** |
| **BURL CAIN, WARDEN** | **SECTION "I"(4)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

## I.    Factual Background

The petitioner, Nicholas Pierron ("Pierron"), is a convicted inmate currently incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2] On December 10, 2002, Pierron and a co-

---

[1]Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 18.

defendant, Calvin Vergin, Jr., were indicted by a Grand Jury in Terrebonne Parish for the second degree murder of Johnnie Dawkins.[3]

The record reflects that, on November 1, 2002, Johnnie "Rusty" Dawkins, and two of his friends, Terry Doss and William Bragg, traveled to a camp in Chauvin, Louisiana for a weekend fishing trip.[4] When they arrived at the camp that evening, they went to a club at the Harbor Light Marina in Cocodrie, Louisiana to play pool. The marina club, owned by Debbie Ledet and her husband Jules, had only one pool table. At approximately 10:30 p.m., Doss and Bragg left the club, and Dawkins remained to continue playing pool. He told his friends he would get a ride back to the camp.

According to Debbie Ledet, Nicholas Pierron's aunt, Dawkins was playing pool with Tommy Hoffele. Hoffele and his girlfriend, Kaiann Pierron, Nicholas's sister, were at the bar with some friends, Monique and Jeremy Foret, and a man named Tyler. At some point while playing pool, Dawkins grabbed Kaiann Pierron's backside. Kaiann and Hoffele were angered, but Dawkins apologized and the two men continued to play pool. Dawkins also bought Hoffele drinks as they continued to play.

At some point, Dawkins and Hoffele made a bet of $7.00 over a pool game. Hoffele won the game, and Dawkins refused to pay, because he had been buying the drinks. As the two men argued, Debbie Ledet asked Hoffele, Kaiann Pierron, and their friends to leave, including Nicholas Pierron.

---

[3]St. Rec. Vol. 1 of 6, Indictment, 12/10/02. The indictment spells the victim's name "Johnie," but the state courts spell the name "Johnnie."

[4]The facts of the case were taken from the unpublished opinion of the Louisiana First Circuit Court of Appeal on direct appeal. *State v. Pierron*, 904 So.2d 967 (La. App. 1st Cir. 2005) (Table); St. Rec. Vol. 2 of 6, 1st Cir. Opinion, 2004-KA-2017, pp. 2-10, 6/10/05.

A short time later, Dawkins jumped up and sat on the pool table.  Jules Ledet, the owners' son, told Dawkins to leave, but he refused.  The two men began to argue.  Jules Ledet grabbed Dawkins and pulled him off of the table.  The two men both fell to the floor.  Jules stood up and again asked Dawkins to leave.  This time Dawkins agreed, and he got up and walked out of his own volition.  He did not appear to be injured.

Dawkins was met in the parking lot by an angry crowd of people, including Hoffele and the Forets.  Hoffele and Dawkins argued over their bet, and Dawkins began walking away down the road.  Calvin Vergin, Jr., ran after Dawkins.  David Pierron, Nicholas and Kaiann's brother, and a man named Treige tried to stop Vergin from going after Dawkins to no avail.  The crowd of people followed Vergin down the street toward Dawkins.

When Vergin caught up with Dawkins, the two men began screaming at each other.  Hoffele then told Dawkins he wanted his money from the bet.  When Dawkins refused to pay, Hoffele struck him, and Dawkins fell to the ground.  When he got up, he gave Hoffele $10.00.  Hoffele then walked back to the marina with Kaiann.

Dawkins continued to walk away from the crowd down the street, clearly trying to leave the scene.  Vergin again followed and exchanged words with Dawkins.  Vergin took a swing at Dawkins, but he missed.  Dawkins did not strike back or defend himself.  Vergin swung again and hit Dawkins, knocking him to the ground.  When Dawkins got up, Vergin hit him again causing Dawkins to fall and hit his head on the concrete.  Monique Foret reported that she "heard a big shatter."  Dawkins did not get up.  At that point, several witnesses reported that Nicholas Pierron ran up "as if he was kicking a football," and kicked Dawkins in the head area with his right foot.  Monique Foret again heard a "big smack like if he broke his neck or something."

The owners of the bar arrived as the fight was ending, and upon seeing Dawkins lying motionless on the ground, Debbie Ledet called 911. Randy Picou attempted mouth-to-mouth resuscitation, and Vergin tried to pump Dawkins's chest.

Dr. Karen Ross conducted the autopsy on Dawkins and determined that he died a couple of days after the fight, on November 4, 2002, of blunt force injuries to the head and neck. She determined that the fall onto the back of his head caused the thin bones in the front of his skull to fracture, resulting in bruises and lacerations to the brain. A second deadly injury was a partial fracture on the right side of the vertebral column between the first two cervical vertebrae. The blood vessel that runs between the two was torn, which caused hemorrhaging over the surface of the brain. Dr. Ross believed this to have been caused by a significant amount of force, such as a kick or direct blow to the neck, in order to have dislocated some of the bones in the spine. She opined that either the injury to the head or the injury to the neck, much less the two together, would have been fatal.

On October 6, 2003, Pierron's co-defendant, Vergin, entered a plea of guilty to manslaughter.[5] The record does not indicate the actual sentence imposed upon him.

Pierron was tried before a jury on January 12, through 15, 2004, and was found guilty as charged of second degree murder.[6] At a hearing held February 4, 2004, the Trial Court denied Pierron's motions for new trial and for post-verdict judgment of acquittal.[7] The Court sentenced

---

[5]St. Rec. Vol. 1 of 6, Waiver of Constitutional Rights and Plea of Guilty, 10/6/03; Guilty Plea Transcript, 10/6/03.

[6]St. Rec. Vol. 1 of 6, Trial Minutes, 1/12/04; Trial Minutes, 1/13/04; Trial Minutes, 1/14/04; Trial Minutes, 1/15/04; Verdict Form, 1/15/04; St. Rec. Vol. 3 of 6, Trial Transcript, 1/12/04; Trial Transcript, 1/13/04; St. Rec. Vol. 4 of 6, Trial Transcript, 1/14/04; Trial Transcript, 1/15/04.

[7]St. Rec. Vol. 1 of 6, Minute Entry, 2/4/04; Motion for New Trial, 1/20/04; Motion for Post-Verdict Judgment of Acquittal, 1/20/04; Amended Motion for New Trial, 1/30/04; St. Rec. Vol. 2 of 6, Hearing Transcript, 2/4/04.

Pierron on February 6, 2004, to serve life in prison without benefit of parole, probation, or suspension of sentence.[8]  The Court also denied his motion to reconsider the sentence.[9]

On direct appeal to the Louisiana First Circuit Court of Appeal, Pierron's counsel raised two assignments of error:[10] (1) the evidence was insufficient to support the verdict, because the witness testimony was inconsistent about whether Pierron kicked Dawson; and (2) the Trial Court erred in allowing the State to present Pierron's grand jury testimony, where Pierron had been told that his testimony could be used against him only if he later made inconsistent statements.  On June 10, 2005, the Louisiana First Circuit affirmed Pierron's conviction, finding no merit in the claims raised.[11]  On its errors patent review, the Court also found that the Trial Court failed to order that the sentence be served at hard labor.  The Court remanded the matter for re-sentencing on that point.

The Trial Court complied with that order and re-sentenced Pierron on August 9, 2005, to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence and with credit for time served.[12]

On February 17, 2006, the Louisiana Supreme Court denied Pierron's subsequent writ application without stated reasons.[13]  His conviction became final 90 days later, on May 18, 2006, when he did not file a writ of certiorari with the United States Supreme Court.  *Ott v. Johnson*, 192

---

[8]St. Rec. Vol. 1 of 6, Sentencing Minutes, 2/6/04; St. Rec. Vol. 2 of 6, Sentencing Transcript, 2/6/04.

[9]*Id.*; St. Rec. Vol. 1 of 6, Motion to Reconsider Sentence, 2/6/04.

[10]St. Rec. Vol. 2 of 6, Appeal Brief, 2004-KA-2017, 11/8/04.

[11]St. Rec. Vol. 2 of 6, 1st Cir. Opinion, 2004-KA-2017, 6/10/05.

[12]St. Rec. Vol. 1 of 6, Re-sentencing Minutes, 8/9/05.

[13]*State v. Pierron*, 924 So.2d 1015 (La. 2006); St. Rec. Vol. 2 of 6, La. S. Ct. Order, 2005-KO-2049, 2/17/06; St. Rec. Vol. 1 of 6, La. S. Ct. Letter, 2005-KO-2049, 8/4/05 (showing postal meter 7/6/05).

F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. S. Ct. Rule 13(1).

## II.    State Procedural Background

On February 6, 2007, Pierron's retained counsel filed an application for post-conviction relief with the Trial Court raising the following grounds for relief:[14] (1) the Trial Court erred in allowing the State to admit and use Pierron's grand jury testimony; and (2) he was denied effective assistance of counsel where counsel allowed Pierron to testify before the grand jury. After receiving additional briefing and after conducting an evidentiary hearing, the Trial Court denied the application on November 19, 2010.[15]

The Court held that the first claim was barred from review under La. Code Crim. P. art. 930.4 as either repetitive of matters addressed on appeal or for failure to include the arguments on appeal of the same issue.[16] The Court further determined that the arguments underlying the ineffective assistance of counsel claim were also barred under La. Code Crim. P. art. 930.4, and otherwise the claim itself was without merit.

Pierron's retained counsel sought review of that order in the Louisiana First Circuit on January 31, 2011.[17] The Court denied relief on March 14, 2011, without stated reasons.[18]

---

[14]St. Rec. Vol. 2 of 6, Application for Post-Conviction Relief, 2/6/07.

[15]St. Rec. Vol. 2 of 6, State's Response, 8/13/07; Supplemental Memorandum, 2/19/10; State's Supplemental Response, 3/18/10; Hearing Transcript, 12/16/09.

[16]St. Rec. Vol. 2 of 6, Trial Court Judgment, 11/19/10.

[17]St. Rec. Vol. 6 of 6, 1st Cir. Writ Application, 2011-KW-0174, 1/31/11; Notice of Intent, 12/15/10 (granted to February 1, 2011 to file).

[18]St. Rec. Vol. 6 of 6, 1st Cir. Order, 2011-KW-0174, 3/14/11.

Pierron's retained counsel next sought review in the Louisiana Supreme Court by writ application filed April 8, 2011.[19]  The Court denied relief without stated reasons on October 14, 2011.[20]

## III.  Federal Habeas Petition

On December 8, 2011, the clerk of this Court filed Pierron's petition for federal habeas corpus relief.[21]  Under a broad reading, and by his reference to his state court post-conviction application, Pierron raises the following two grounds for relief:[22] (1) the Trial Court erred in allowing the State to admit and use Pierron's grand jury testimony at trial to impeach Randy Picou; and (2) he was denied effective assistance of counsel where counsel allowed Pierron to testify before the grand jury.

The State filed an answer in opposition to Pierron's petition conceding timeliness and exhaustion.  The State, without any analysis other than to recite the state courts' rulings, argues that Pierron's petition should be denied as meritless.

## IV.  General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[23] applies to this petition, which is deemed filed in this Court under the federal

---

[19]St. Rec. Vol. 5 of 6, La. S. Ct. Writ Application, 11-KP-711, 4/8/11; St. Rec. Vol. 2 of 6, La. S. Ct. Letter, 2011-KP-711, 4/8/11.

[20]*State v. Pierron*, 74 So.3d 720 (La. 2011); St. Rec. Vol. 5 of 6, La. S. Ct. Order, 2011-KP-0711, 10/14/11.

[21]Rec. Doc. No. 1.

[22]As noted in the State's opposition response, Pierron's petition references an attached memorandum in which Pierron only argues that he is entitled to equitable tolling with regard to the timeliness of the filing of his federal petition. In the conclusion of that memorandum, he refers the Court to the state application for post-conviction relief.

[23]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996.  *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law on that date, does not specify

mailbox rule on November 14, 2011.[24] The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b)-(c) (2006)).

In this case, the State conceded, and the Court has determined that, Pierron's petition was timely filed and his claims are exhausted. Before proceeding to review of the claims, the Court notes that the state courts' reliance on La. Code Crim. P. art. 930.4(A) to bar review of Pierron's post-conviction claims which were repetitive of matters addressed on appeal, is not a typical procedural bar; instead, it prevents <u>further</u> review of a claim previously raised on appeal. The presumption in the rule is that the claims were not new or different from something previously litigated and resolved on appeal. *Bennett v. Whitley*, 41 F.3d 1581, 1583 (5th Cir. 1994). However, "the bar imposed by article 930.4(A) is not a procedural bar in the traditional sense, nor is it a decision on the merits." *Id.* For this reason, the bar imposed on post-conviction review does not affect this Court's ability to consider on habeas review the state court's underlying review of a claim

---

an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[24]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting *pro se*. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999), *cert. denied*, 529 U.S. 1057 (2000); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of court filed Pierron's petition on December 8, 2011, when the filing fee was received. Pierron dated his signature on the form petition on November 14, 2011. This is the earliest date on which he could have submitted the pleadings to prison officials for mailing. The fact that he later paid the filing fee does not alter the application of the federal mailbox rule to his pro se petition. *See Cousin v. Lensing*, 310 F.3d 843, 847 (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing *Spotville*, 149 F.3d at 374).

considered on direct appeal. This Court looks instead to the underlying basis for the denial of relief given on appeal.

## V. <u>Standards of Review on the Merits</u>

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000). It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

A state court's determinations of questions of fact are presumed correct and the court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2) (2006); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1) (2006).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA. The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court. *Hill*, 210 F.3d at 485.

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210

F.3d at 485. A state court's decision can involve an "unreasonable application" of federal law if it either: (1) correctly identifies the governing rule but then applies it unreasonably to the facts; or (2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable. *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law. *cf. Wright v. West*, 505 U.S. 277, 304 (1992). The court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law. *See, e.g., id.* at 305; *see also Chambers v. Johnson*, 218 F.3d 360, 364 (5th Cir. 2000), *cert. denied*, 531 U.S. 1002 (2000). "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)) (brackets in original); *Bell v. Cone*, 535 U.S. 685, 699 (2002)).

Thus, under the "unreasonable application" determination, the Court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. *Price*, 538 U.S. at 641 (quoting *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006). In addition, review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, __ U.S. __, 131 S. Ct. 1388, 1398 (2011).

**VI.**    <u>**Admission of Grand Jury Testimony**</u>

Pierron argues that the Trial Court erred in allowing the State to admit and use his grand jury testimony to rebut the testimony of Randy Picou. The record indicates that after the defense rested, the State moved to reopen its case to allow rebuttal evidence. Specifically, the State sought to impeach Picou, who had testified for the defense that Pierron was not present outside of the marina when Dawkins was hit and kicked by Vergin and Hoffele. Over the objection of defense counsel, and relying on *State v. Poland*, 782 So.2d 556 (La. 2001), the Trial Court allowed the use of the transcript for that purpose finding that, under state law, the use was not prohibited and Pierron had waived his rights when he testified.

In *Poland*, the Louisiana Supreme Court held that the use of a defendant's grand jury testimony as direct substantive evidence was proper where a defendant, already facing charges, knowingly, voluntarily, and in the presence of an attorney waived his right to remain silent and the right not to incriminate himself. The *Poland* Court also resolved that the use of the testimony of a charged defendant did not violate the secrecy requirement found in La. Code Crim. P. art. 434. As a result, the State used Pierron's grand jury testimony to demonstrate that Pierron placed himself at the scene, which was contrary to Picou's trial testimony.

On appeal, Pierron's counsel argued that it was error to allow the testimony at trial, because Pierron was advised at the grand jury proceeding that the testimony would only be used if he later gave an inconsistent statement. Since he did not testify and gave no inconsistent statement, it was not appropriate for the State to use it at trial. Approving of the Trial Court's reliance on *Poland*, the Court found no error in the Trial Court's ruling.

The Louisiana First Circuit held that the *Poland* decision authorized the Trial Court to allow the State to present Pierron's grand jury testimony. Alternatively, in Pierron's case, the Louisiana First Circuit determined that if it had been an error, it was harmless in light of the other evidence that contradicted Picou, and Picou's apparent lack of credibility. The Court resolved that the verdict was not attributable solely to the use of the grand jury testimony.

On post-conviction, Pierron's counsel again argued that the Trial Court erred in allowing the use of the grand jury testimony. He argued that the grand jury testimony should have remained secreted to be consistent with Louisiana jurisprudence other than *Poland* and amounted to inappropriate hearsay since Pierron did not testify at trial. He further argued that no exception existed under Louisiana evidentiary rules to allow the admission of the testimony where Pierron had exercised his right not to testify at trial and was not then given the choice to testify or re-open the defense's case after the testimony was admitted. He further argued that this denied him his confrontation rights under *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004).

As noted above, the state trial court denied relief finding that the claim had been resolved on direct appeal, or could have been, and was barred as repetitive under La. Code Crim. P. art. 930.4.

Pierron now seeks relief in this federal court based on his counsel's state court arguments that the Trial Court erred in admitting his grand jury testimony to rebut Picou's testimony, because it violated state law governing use of grand jury testimony, it violated state rules on hearsay evidence, and it violated the Confrontation Clause under the guidelines set forth in *Crawford*.

As an initial matter, the Court notes that any errors alleged by Pierron which occurred under state law are not properly considered on habeas review. It is well settled that states are free to

implement procedures regarding the presentation and admission of evidence, provided that those procedures do not infringe on a constitutional guarantee. *Riggins v. Nevada*, 504 U.S. 127, 147 (1992); *Burgett v. State of Texas*, 389 U.S. 109 (1967). Therefore, federal courts do not sit to review the propriety of state court evidentiary rulings, unless the proceedings violate due process such that the violation renders the criminal proceeding fundamentally unfair. *Riggins*, 504 U.S. at 147 (quoting *Lisenba v. People of the St. of Ca.*, 314 U.S. 219, 236-37 (1941)); *see also*, *Swarthout v. Cooke*, __ U.S. __, 131 S. Ct. 859, 861 (2011) (federal habeas review does not lie for errors of or in applying state law); *see also United States v. Derden*, 978 F.2d 1453, 1458 (5th Cir. 1992) (errors of state law, including evidentiary errors, are <u>not</u> cognizable in habeas corpus, as such, and only rise to constitutional dimension if they so infuse the trial with unfairness as to deny due process such that they more likely than not caused a suspect verdict); *Peters v. Whitley*, 942 F.2d 937, 940 (5th Cir. 1991) (habeas review is proper only to determine whether a state trial judge's error is so extreme as to render the trial fundamentally unfair or violate an explicit constitutional right).

In addressing these due process considerations, the Court also finds that Pierron has improperly relied upon the Supreme Court opinion in *Crawford* to support his claim that his grand jury testimony was inadmissible at his trial. In *Crawford*, the Supreme Court reiterated that the Sixth Amendment's Confrontation Clause gives the accused "[I]n all criminal prosecutions, . . . the right . . . to be confronted with the witnesses against him." *Crawford*, 541 U.S. at 59. The Supreme Court held that the Confrontation Clause permits admission of "[t]estimonial statements of witnesses absent from trial . . . only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." *Id.*, at 53-54. Testimonial statements include "ex parte in-court testimony or its functional equivalent – that is, material such as affidavits, custodial

examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially." *Id.*, at 51.

The *Crawford* court considered the statements of adversarial witnesses against the accused and did not address statements made by the accused himself. Since *Crawford*, federal courts addressing the use of an accused's own statements have found that a defendant's own admission can be admitted without the right to cross-examination. *See*, *e.g.*, *United States v. Brown*, 441 F.3d 1330, 1358-59 (11th Cir. 2006) (party's own admission offered against him did not violate the Confrontation Clause), *cert. denied*, 549 U.S. 1182 (2007); cf. *United States v. Briscoe-Bey*, 126 Fed. Appx. 551, 553 (3d Cir. 2005) (finding no *Crawford* error in admitting defendant's conversation with informant). There is no violation of defendant's Sixth Amendment right to confront when the "witness" against the defendant is the defendant himself. *See United States v. Lafferty*, 387 F. Supp.2d 500, 511 (W.D. Pa. 2005) (citing *Crawford*, 541 U.S. at 42-60). Based on the foregoing, the Court finds that neither the Sixth Amendment nor *Crawford* provide any protection to Pierron from the introduction of his own statement.

Furthermore, he has not established a violation of any protected right under the Fifth Amendment. First, the Supreme Court has "never embraced the theory that a defendant's ignorance of the full consequences of his decisions vitiates their voluntariness." *Oregon v. Elstad*, 470 U.S. 298, 316 (1985). As such, any statement given by a defendant freely and voluntarily after advice of his rights is admissible into evidence against him. *Miranda v. Arizona*, 384 U.S. 436, 478 (1966).

Pierron has failed to point to any Supreme Court precedent which would require a finding that the state courts' denial of relief was contrary to or an unreasonable application of that precedent. Having failed to do so, he has not established any due process or other constitutional violation

arising from the State's use of his grand jury testimony. Without some constitutional prohibition to allowing its use, there is no fundamental unfairness demonstrated.

Having failed to establish a violation of a constitutional right, Pierron also has failed to establish that the state courts' denial of relief was contrary to or an unreasonable application of Supreme Court law. He is not entitled to relief on this claim.

## VII.   **Ineffective Assistance of Counsel**

Pierron alleges that his pre-trial counsel was ineffective in allowing him to testify before the grand jury claiming this to have been a high profile case involving a notable citizen. He argues that, when Pierron appeared before the grand jury, his counsel should have been aware of the Louisiana Supreme Court's opinion in *Poland*, 782 So.2d at 556, which allowed for the use of a defendant's grand jury testimony as direct substantive evidence. In light of *Poland*, he claims that counsel erred in allowing Pierron to testify where counsel could not be present in the room and did not have the ability to question him. He argues that this was deficient performance and prejudicial to the defense since the testimony was eventually admitted at trial to impeach Picou.

Pierron's counsel raised this issue on post-conviction review. The state trial court conducted a hearing on the issue at which Pierron's prior counsel, Charles Gary Blaize, testified regarding his representation of Pierron at the time of the grand jury inquiry.[25]  During that testimony, Blaize indicated that he was familiar with the state law on the use of grand jury testimony, although he did not specifically recall the *Poland* case.[26]  He also recalled that he did not advise Pierron to testify

---

[25]St. Rec. Vol. 2 of 6, Hearing Transcript, 12/16/09.

[26]*Id.*, at pp. 6-11.

before the grand jury.[27]  He instead left him the choice and advised him about the pitfalls of testifying before the grand jury, among which was that the testimony could be used against him or to impeach another witness.[28]

At the same hearing, Pierron acknowledged that Blaize told him that the testimony could be used against him.[29]  He also testified that he willingly chose to testify before the grand jury, based in part on counsel's advice and the knowledge that the grand jury had refused to indict one of his co-defendants.[30]  He indicated that Blaize told him he would be present, but he did not see him there.[31]  He stated, however, that he would not have known if Blaize was in the hallway outside of the grand jury courtroom, because he was brought in through a secured inmate area.[32]  He also did not understand from the district attorney that he could have stopped the proceedings to seek Blaize's advice during the questioning.[33]

The state trial court denied relief based on this testimony and the record, including testimony given at the September 26, 2003 hearing on the motion to exclude the grand jury testimony.[34]  The

---

[27]*Id.*, at pp. 13.

[28]*Id.*, pp. 11, 18.

[29]*Id.*, p. 28.

[30]*Id.*, pp. 32-33.

[31]*Id.*, p. 30.

[32]*Id.*, pp. 30-31.

[33]*Id.*, p. 30.

[34]The state trial court erroneously referenced the date of this hearing as September 22, 2003.  The hearing was to consider a motion to quash the indictment and to suppress the grand jury testimony.  A review of the transcript of the hearing indicates that Blaize and Pierron also testified on that day with specific focus on whether the testimony was freely given to the grand jury after a proper waiver of his rights.  St. Rec. Vol. 1 of 6, Motion Hearing Transcript, 9/26/03.

Court noted that the testimony given by the two men in 2003 was likely more accurate than the testimony given in 2009, but both were consistent and relevant to resolving the post-conviction application. Also relying heavily on the prior decision of the Louisiana First Circuit on direct appeal, the Court determined that Pierron was advised of his rights and the consequences of testifying and did willingly choose to testify before the grand jury.[35] The Court also reiterated the appellate court's prior finding that the grand jury testimony did not contribute to the verdict, and thereby concluding that counsel did not act to prejudice the defense.

The issue of ineffective assistance of counsel is a mixed question of law and fact. *Richards v. Quarterman*, 566 F.3d 553, 561 (5th Cir. 2009). The question is whether the state courts' denial of relief was contrary to, or an unreasonable application of, United States Supreme Court precedent.

The appropriate standard for judging the performance of counsel was established by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and prejudice therefrom. *See Strickland*, 466 U.S. at 697. The petitioner has the burden of proving ineffective assistance of counsel by a preponderance of the evidence. *Montoya v. Johnson*, 226 F.3d 399, 408 (5th Cir. 2000); *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1992). In deciding ineffective assistance claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. *Amos v. Scott*, 61 F.3d 333, 348 (5th Cir. 1995).

---

[35]St. Rec. Vol. 2 of 6, Trial Court Judgment, 11/19/10.

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment. *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001), *cert. denied*, 534 U.S. 1163 (2002). "The defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88; *Cantu v. Thaler*, 632 F.3d 157, 163 (5th Cir. 2011). The analysis of counsel's performance must take into account the reasonableness of counsel's actions under prevailing professional norms and in light of all of the circumstances. *See Strickland*, 466 U.S. at 689; *Carty v. Thaler*, 583 F.3d 244, 258 (5th Cir. 2009). The reviewing court must "'judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. *Harrington v. Richter*, __ U.S. __, 131 S. Ct. 770, 787 (2011) (citing *Strickland*, 466 U.S. at 689).

In order to prove prejudice, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Williams v. Thaler*, 602 F.3d 291, 310 (5th Cir. 2010). Furthermore, "[t]he petitioner must 'affirmatively prove,' and not just allege, prejudice." *Day v. Quarterman*, 566 F.3d 527, 536 (5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 695). In this context, "'a reasonable probability is a probability sufficient to undermine confidence in the outcome." *Cullen*, 131 S. Ct. at 1403 (quoting *Strickland*, 466 U.S. at. 694). This standard requires a "substantial," not just "conceivable," likelihood of a different result. *Harrington*, 131 S. Ct. at 791.

In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett v. McCotter*, 796 F.2d 787, 793 (5th Cir. 1986). Thus, conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas relief. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)), *cert. denied*, 531 U.S. 849 (2000).

On habeas review, the United States Supreme Court has clarified that, in applying *Strickland*, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Harrington*, 131 S.Ct. at 788. The *Harrington* Court went on to recognize the high level of deference owed to a state court's findings under *Strickland* in light of AEDPA standards of review:

> The standards created by *Strickland* and §2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

(citations and quotation marks omitted) *Harrington*, 131 S. Ct. at 788.

Thus, scrutiny of counsel's performance under § 2254(d) is "doubly deferential." *Cullen*, 131 S. Ct. at 1403 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). The federal courts must take a "highly deferential" look at counsel's performance under the *Strickland* standard through the "deferential lens of § 2254(d)." *Id*. (citing *Strickland*, 466 U.S. at 689 and quoting *Knowles*, 556 U.S. at 121 n.2).

In the instant case, Pierron has failed to establish that counsel acted deficiently in allowing him to testify before the grand jury. In *Strickland*, the Supreme Court stated the following:

> [t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant.

*Strickland*, 466 U.S. at 691. The Court also noted in *Strickland* that a fair assessment of an attorney's performance requires one "to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.*, 466 U.S. at 689.

According to the pretrial and post-conviction hearing testimony, and the findings made by the state courts, Pierron at the time informed Blaize that he was not involved in the deadly attack. With his innocence professed to counsel, counsel advised him accordingly. Pierron then chose to testify in hopes that the grand jury would not indict him. He admittedly did so of his own choosing after being fully advised by counsel of the benefits and consequences of doing so.

Under these circumstances, counsel was not ineffective for allowing Pierron to testify before the grand jury. *Fuller v. Johnson*, 158 F.3d 903, 907 (5th Cir. 1998) (counsel not deficient in allowing defendant to testify before grand jury where defendant wanted testify and advised counsel he was not involved in charged crime). Furthermore, counsel's strategic decision in allowing Pierron to testify about his professed innocence is afforded due deference and can not be judged in hindsight.

Having failed to show deficient performance, he has failed to meet the first prong of the *Strickland* test and failed to demonstrate an error in the state courts' denial of relief on this claim. For these reasons, Pierron has failed to demonstrate that the state courts' denial of relief was

contrary to, or an unreasonable application of, *Strickland*. Pierron is not entitled to relief on this claim.

## VIII.   Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Nicholas Pierron's petition for the issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 as amended be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[36]

New Orleans, Louisiana, this 16th day of March, 2012.

KAREN WELLS ROBY
UNITED STATES MAGISTRATE JUDGE

---

[36]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.